# CASES DETERMINED

IN THE

# SUPREME COURT OF THE UNITED STATES.

## FEBRUARY TERM, 1814.

### GRIFFITH v. FRAZIER. (a)

*Administration.— Void judgment.*

So long as a qualified executor is capable of exercising the authority with which he has been invested by the testator, that authority cannot be conferred, either with or without limitation, by the court of ordinary, on any other person. And if, during such capability of the executor, the ordinary grant administration, either absolute or temporary, to another person, that grant is absolutely void.[1]

If a judgment be rendered against one, as executor, who is not executor, it does not bind the estate of the testator; and an execution upon such a judgment cannot legally be levied upon such estate.

By the law of South Carolina, administration *durante absentia executoris*, cannot be granted, after probate of the will and letters testamentary granted.

The acts of a tribunal, upon a subject not within its jurisdiction, are void.[2]

By the law of South Carolina, the thirty day rule is substituted for *scire facias* on a judgment, in those cases only, where lapse of time prevents the plaintiff from suing out execution.

ERROR to the Circuit Court for the South Carolina district. This was an action of trespass *quare clausum fregit*, brought by the plaintiff in the circuit court (who was also plaintiff in error), to recover a tract of land, lying in the district of South Carolina, and in the possession of the defendant, to which the plaintiff asserted a title derived from a certain Joseph Salvadore.

Both parties admitted, that Salvadore was legally seised of an estate in fee, in the land in dispute. It appeared further, that Salvadore had executed several bonds, in favor of a certain Daniel Bordeaux ; that Bordeaux brought an action against Salvadore on these bonds, and obtained thereon a judgment by default, which was entered up and signed, on the 30th of August 1786 ; that no further steps were taken in the cause, until the 2d of January 1787, when an execution issued thereon, and was lodged in the

---

(a) February 9th, 1814. Present, all the judges.

[1] s. p. Kane *v.* Paul, 14 Pet. 33.     [2] Elliott *v.* Piersol, 1 Pet. 329.

Griffith v. Frazier.

sheriff's office on the same day; that Salvadore departed this life on the 29th of December immediately preceding. Salvadore left a will and two or or three codicils, by which he appointed his three daughters, a certain William Stevens, and a certain Joseph Dacosta, his executors. All these persons were absent, out of the state, excepting Dacosta, who proved the will and codicils, and regularly qualified as executor thereto, on the 5th of January 1787: he continued to reside in the city of Charleston, South Carolina, until some time in the year 1789, when he went to Savannah, in the state of Georgia, where he continued to reside *until November 1790.

On the second day of October 1790, one James Lamotte, requested and obtained from the ordinary of Charleston, a citation, in behalf of the principal creditor of Salvadore, who was Bordeaux, to show cause why letters of administration with the will annexed, should not be granted to him. On the return of the citation, no cause being shown to the contrary, the ordinary did, on the 8th of October 1790, grant general letters of administration with the will annexed, on the estate of Salvadore, to Lamotte. A certificate was also obtained from the ordinary, by which it appeared, that it was the custom of the ordinary court to grant letters of administration *durante absentia* of the executor.

Bordeaux, on the 27th January 1791, obtained a rule from the court of common pleas, against Lamotte, as administrator of Salvadore, to show cause, within thirty days, why the judgment obtained against Salvadore, as aforesaid, should not be revived, and an execution issue thereon. This rule was made absolute on the 15th of March 1791, "subject to future argument." On the 16th of April following (no further argument or proceeding having been had on the said rule, and no court intervening in the meantime), an execution issued on said judgment, against Lamotte, administrator, &c.; was lodged in the sheriff's office, and levied upon the land in question, by the sheriff, on the 11th of May 1791. The land was sold at public outcry to the highest bidder, on the 6th of June 1791, and by a deed of the same date, was conveyed by the sheriff to Peter Freneau, the purchaser. On the 16th of July 1796, a decree was rendered in the suit, Pierce Butler v. Daniel Bordeaux and Peter Freneau, directing the said Peter to convey to such person as Pierce Butler should appoint. In pursuance of this decree, Peter Freneau conveyed to Samuel Jackson, under whom Griffith, the plaintiff in this case, claimed by regular conveyances. Frazier, the defendant, represented the heirs of Salvadore.

On the motion of the defendant, the circuit court instructed the jury, that the letters of administration granted to James Lamotte were totally void; that, therefore, the judgment of Bordeaux was not revived against the estate of Salvadore; that the sale and conveyance by the sheriff passed no title to the purchaser; and that *the evidence was not sufficient to maintain the plaintiff's action. The jury found a verdict for the defendant, and judgment was rendered in his favor. The plaintiff excepted to the opinion of the court, and sued out a writ of error to the judgment.

*Harper*, for the plaintiff in error, after stating the facts of the case, contended, 1st. That the letters of administration, being *durante absentia* of the executor, were lawfully and properly granted by the ordinary to James

2

Griffith v. Frazier.

Lamotte.   2d. That the question whether the granting of these letters were legal or not, was a question proper for the decision of the court of ordinary ; and that the judgment of that tribunal was conclusive, until reversed on appeal to the state court, having competent jurisdiction : that consequently, the sale, in the present case, was valid, and the plaintiff's title good.

*Jones*, contrâ.—1. The grant of administration *durante absentia* was absolutely void : which being the case, it is clear, that the subsequent sale of the property in question by the sheriff was illegal and invalid.   Dacosta, the executor, had duly qualified ; and the circumstance of his having absented himself from the state of South Carolina, for the space of twelve months, is a matter of no importance, unless, at the same time, he was incapable of performing his duty as executor.   But this does not appear to have been the fact.   The ordinary, therefore, had no right to grant letters of administration to Lamotte.

As to the certificate, said to have been given by the ordinary, stating that it was the custom of the ordinary court to grant administration *durante absentia* of an executor, it would be shown, on the part of the defendant, that in every case which could be produced in support of that custom, the executor had not qualified.

The jurisdiction of the ordinary relative to the appointment *of an administrator, is determined by the act of the testator in appoint-  [*12 ing an executor.   The administrator derives all his rights from the court of ordinary, and nothing from the will.   1 Com. Dig. 340 ; 1 Salk. 302 ; Toller on Executors, 76, 98 ; 2 Bac. Abr. 381, 386, 401 ; 2 Plowd. 271.   The grant of letters of administration has, in some cases, been decided to be void, even after the refusal of the executor to take upon himself the execution of the will.   2 Bac. Abr. 386 ; Went. 145.   The ordinary, in granting administration, is a ministerial, not a judicial officer.   Toller 50, 66 ; Jac. Law Dict. tit. Executor ; 12 Mod. 437.

In the case under consideration, the executor had proved the will ; and it did not appear to the ordinary, that there were any goods and chattels unadministered.   If this were the fact, the ordinary had no jurisdiction in the case.   2 Bac. Abr. 385 ; Griffith's collection of South Carolina laws, p. 35, 492 ; *Ober's administrator* v. ———, MS. report of a case decided in South Carolina.   By the statute of 38 Geo. III., c. 87, to remedy the defect of the law in not giving to the ordinary the power of appointing an administrator *durante absentia* of an executor who had proved the will, it was evident, that, previous to that statute, the ordinary possessed no such power. That statute was so explained in the case of *Taynton* v. *Hannay*, 3 Bos. & Pul. 26 ; Toller, 104.   When the executor had taken upon himself the trust of executing the will, the goods were out of the jurisdiction of the ordinary. Went. 39 ; 4 Burn's Eccl. Law.

If the jurisdiction of the ordinary ceased upon the qualification of the executor, all his subsequent acts in relation to the business, were void.   3 T. R. 130 ; Toller 128.   The supreme court of the United States has decided this principle, in cases analogous to the present.   *Rose* v. *Himely*, 4 Cr. 241 ; *Wise* v. *Withers*, 3 Ibid. 331.   Where a court has no jurisdiction in regard to a particular subject, trespass will lie against a sheriff for executing its orders relative thereto.

*2. Admitting the administration granted to Lamotte to have been rightful, yet the execution against him, under which the land in question was sold, was absolutely void ; because the thirty day rule, under which the plaintiff attempted to revive the judgment in this case, was admissible only where the judgment had expired by lapse of time merely ; but was not competent to revive a suit or a judgment against the representative of a dead party, which could only be done by *scire facias ;* and no *scire facias* having issued in this case, to make Lamotte a party, the execution against him was absolutely void, for want of a judgment whereon to ground it.   Griffith's collection of S. Carolina Laws, 466–7, § 7.

*Pinkney,* Attorney-General, on the same side.—The principal, if not the only, point in controversy is, whether the court of ordinary had jurisdiction in the case now under consideration.

The ordinary, in receiving probate of a will, acts ministerially ; and when the will is proved, he is *functus officio.*  The authority of the executor is derived from the will.   The only power of the ordinary is to ascertain the existence of the will.   If administration be granted, upon the supposition that no will exists, and a will afterwards appear, all the proceedings under the administration are void—the administration is a mere nullity.   Toller 120–21.   If there be a will, administration cannot be granted, until the executor has refused or neglected to appear on summons.   Toller 93.   If administration be granted *durante absentia* of the executor, it becomes void, upon the return of the executor and probate of the will.   After probate, the ordinary has no further jurisdiction.

The reason of the thing is obvious.   The will vests the testator's property in the executor : he has a right, after probate, to appoint an attorney. But according to the doctrine contended for by the plaintiff, the ordinary *may also appoint an attorney in the place of the executor.   This would be a manifest inconsistency.   The executor, after accepting the trust, is bound to administer, and is liable for the goods intrusted to him. See MS. report of the case of *Ford* v. *Travis,* in the Court of Appeals of South Carolina,(*a*) in which the court decided unanimously, that after probate of a will, the grant of administration is void, although the executor is absent.

*Harper,* in reply.—If this case is against the plaintiff in error, it is a case of sheer law against justice.   The plaintiff in error is a fair *bonâ fide* purchaser, without notice, under the sanction of the decrees of the courts of the state where the land lies.

The principle contended for by the defendant, is only true as to the general disposition of the estate.   It does not apply to the temporary interference of the ordinary in particular cases, the peculiar circumstances of which render such interference necessary ; such as cases of administration *durante minori œtate, ad colligenda bona,* &c.   In the case of *Ford* v. *Travis,* cited by the counsel on the opposite side, the ordinary had granted unlimited administration for all purposes and for ever ; but in the case now before the court, the grant of administration is special and temporary, as

---

(*a*)  2 Brevard 299.

Griffith v. Frazier.

appears by the recital in the letters themselves. The grant of these letters was nothing more than the appointment of a curator. In England, the ordinary has a general power to issue letters of administration *durante absentia*. The statutes of Edw. III. and Hen. VIII., it is true, did not give a direct authority to grant administration in any case where there was an executor; but a practice grew out of the equity of those statutes, to grant temporary administration, during the inability of the executor to act; as *pendente lite, minori ætate*, executor insane, &c. *Walker* v. *Wollaston*, 2 P. Wms. 576.

The general power of the ordinary to grant administration *ceases on the probate of a will in which an executor is named; but not in [*15 his power over the estate for special temporary purposes. The case in P. Wms., just cited, in which case probate had been granted, states the reasons for this temporary interference. The reason for granting administration *durante absentia* is the same as for granting it *durante minori ætate*. The degree of the necessity makes no difference: it is sufficient, that there is a necessity. It is said, that the executor may appoint an attorney. True, but suppose he does not—suppose that, without so doing, he abandons the estate and leaves the country. Would not this be a case for the interference of the ordinary in the temporary appoinment of an administrator? The only inference that can be drawn from the statute of Geo. III., c. 87, which has been cited on the other side, is, that the power of the ordinary to grant administration in such cases was doubted; not that it did not exist: and so is the case in 3 Bos. & Pul. 26, to be understood. The statute of George III. is only declaratory of the common law; it does not enact a new law.

Such, then, is the doctrine in England on this subject. In South Carolina, it is the same. Until the year 1712, there is no trace of the existence of ordinaries in South Carolina. In that year, an act was passed declaring the statutes of 13 Edw. I., and 31 Edw. III., c. 11, to be in force in that colony, and enacting that the powers mentioned in those acts as belonging to the ordinary in England, shall be exercised by the same kind of officer in South Carolina. The act of 1744, directing the manner of returning inventories, speaks of ordinaries as then existing. The act of 1789, directing the manner of granting probate and administration, gives that power to the county courts, in those counties where such courts were established, and, in the other counties, leaves it to the ordinaries. The statute of Hen. VIII. is not in force in South Carolina; the common law is.

*The doctrine, therefore, relative to the subject under consideration is the same in South Carolina as in England; and the power of [*16 the ordinary is the same.

That it has been the practice of the ordinary court to grant administration *durante absentia*, the defendant does not deny, but urges that it has never, until the present case, been granted *after probate* by the executor. Perhaps not; but the reason is, that no such case has before occurred. If it had, there is no doubt, that the ordinary court would have granted administration as it has now done. The courts of the same description in England would have done the same. If they had not, the legislature would have interfered.

2. The judgment of the ordinary is conclusive that he acted judicially, and upon a subject properly cognisable by his court. Therefore, even admitting that he erred in granting the letters of administration to Lamotte,

yet Lamotte was administrator *de facto,* and his acts bound the estate of
Salvadore, until those letters should be revoked. That the subject was one
properly cognisable by the ordinary, cannot be denied. He had jurisdiction,
under the equity of the statutes already cited, to grant temporary adminis-
tration. He had jurisdiction to ascertain whether or not there was a will of
personal property ; and no prohibition would lie to his proceedings. In a
contest between two persons of the same name, both claiming to be exec-
utor, he might decide which of the two was entitled to administer the
estate. He was competent to put such a construction upon the statutes as
he might think correct, and to ascertain his powers growing out of the
equity of those statutes. His judgment, therefore, in the present case,
unless reversed on appeal to the court of common pleas of South Carolina,
was conclusive in every other court where it might come incidentally in
question. Yet this court is now called upon not only to declare the judg-
ment of the ordinary void, and to reverse the same, but to reverse also that
of the appellate court by which his judgment has been confirmed.

*17]    3. The judgment on which the execution in this case *issued, was
properly revived by a court of competent jurisdiction, and its judg-
ment can be questioned only in an appellate court. The judgment was
revived by a thirty day rule. That rule was, in fact, a *scire facias.* The
proceeding was conformable to the usual practice in South Carolina. The
court of common pleas of that state adjudged the execution to be awarded
upon this revival. Can this court, under such circumstances, reverse that
judgment ? Suppose, the judgment of the court of common pleas had been
founded on a *scire facias,* and that *scire facias* had been informal. Could
this court, in such a case, reverse the judgment ? We contend, that it could
not, in either case. The court that ordered the execution to be awarded,
had jurisdiction so to do ; and its decision is final.

The 9th section of the law of South Carolina, respecting the thirty day
rule to revive judgments, &c., gives express authority to the courts of that
state to issue execution without a *scire facias.* But it is objected, that this
act is applicable only to cases of lapse of time, not to cases of the death of
the party. But this is matter of construction, on which those courts were
competent to decide.

The doctrine in the case of *Ford* v. *Travis,* so much relied upon by the
defendant's counsel, is only that an unconditional, unlimited administration,
where the executor has previously obtained probate of the will, is void ; not
that a temporary administration would have been so, in a like case.

4. Admitting the execution to have been improperly issued, still the sale
of the property under that execution was valid. All acts under a judgment
obtained by fraud are valid ; *à fortiori,* if the judgment be founded on a
mistake either of law or fact. *Simms and Wise* v. *Slacum,* 3 Cr. 306. It is
laid down in 2 Bac. Abr. 270, tit. Execution, that "if, upon his judgment,
*18]    the plaintiff takes out *fieri facias,* and thereupon, the sheriff sells a
term for years, to a stranger, and the judgment is afterwards reversed,
the defendant shall only be restored to the money for which the term was
sold, and not to the term itself ; for, by the writ, the sheriff had authority to
sell ; and if the sale may be avoided afterwards, few would be willing to pur-
chase under executions, which would render writs of execution of no effect."
The following authorities go to establish the same point. Roll. Abr. 778 ;

Griffith v. Frazier.

Cro. Eliz. 278 ; Cro. Jac. 246 ; *Matthew Manning's case,* 8 Co. 96 ; *Dr. Drury's case,* Ibid. 142 ; *Earl* v. *Brown,* 1 Wils. 302.   It is true, that these cases all relate to sales of personal property ; but there is no difference as it respects the sale of lands under a *fieri facias,* or what was equivalent thereto, as in the present case.   These lands were sold as personal effects.   1 Haywood, N. C. 24–5.

PINKNEY, contrà, contended, 1. That the case in 3 Bos. & Pul. did not state that the statute of Geo. III. was founded on a doubt, but upon a clear defect of jurisdiction.   That no case could be found to sanction the grant of administration *after probate,* in a case like the present.   That the case of *Ford* v. *Travis* was decisive, that no such administration was valid in South Carolina.

2. That the judgment of the ordinary was not conclusive, that he had no jurisdiction in a case like that under consideration.   That the court of appeals of South Carolina was of this opinion, and had, therefore, declared the judgment of the ordinary void.   2 Bac. Abr. 376.

3. That the judgment on the rule to show cause was not conclusive ; and this, besides the other reasons which have been already mentioned, because it was against a person not a representative of the testator.

4. That this was not the case of a sale to a third person, as in the authority cited from Bacon, and the other cases to the same point ; but that the plaintiff claimed under Bordeaux, as a purchaser.

*That the statute of South Carolina, respecting the thirty day   [*19 rule, was only applicable to cases of lapse of time, not to cases of the death of the party.

That as to the case in 1 Wils. 302, cited by the plaintiff's counsel, it did not appear, that the court decided on the validity of the sale, nor that any person wished to disturb it.

*Jones,* on the same side, as to the law respecting a void judgment, cited Vin. Abr. tit. Error ; also Com. Dig. and Bac. Abr., same title.

Tuesday, February 15th, 1814. (Absent, Washington, J.) MARSHALL, C. J., delivered the opinion of the court, as follows :—The plaintiff in error, who was also plaintiff in the circuit court, brought a writ of trespass *quare clausum fregit,* in order to try his title to certain lands, lying in the district of South Carolina, which were in possession of the defendant. The title of the plaintiff, which constituted the sole question in the cause, appeared, on the trial, to be as follows :

Joseph Salvadore, being seised of the lands in which the trespass is alleged to have been committed, departed this life, some time in the year 1786, having first made his last will in writing, in which he named several executors, one of whom, Joseph Dacosta, made probate of the will, and took upon himself the burden of executing the same ; after which, in the year 1789, he left the state of South Carolina, and resided in Georgia.   In the year 1790, letters of administration on the goods of Salvadore, unadministered by Dacosta, his qualified executor, were granted to James Lamotte. In August 1786, a judgment was obtained by Daniel Bordeaux against Salvadore.   In January 1791, a thirty day rule, which, by an act of the state of South Carolina, was, in certain cases, substituted in the place

Griffith v. Frazier.

*of a *scire facias*, was issued to revive this judgment against Lamotte, as administrator of Salvadore. This rule being served and returned, the following indorsement was made on it: "15th March, 1791, made absolute, subject to a future argument." "*Fi. fa.* 16th April 1791."

An execution issued on this judgment, under which the land was sold, and was conveyed by the sheriff to Peter Freneau, by a deed dated the 6th day of June 1791. On the 16th of July 1796, a decree was rendered in the suit, Pierce Butler *v.* Daniel Bordeaux and Peter Freneau, directing the said Peter to convey to such person as Pierce Butler should appoint. In pursuance of this decree, Peter Freneau conveyed to Samuel Jackson, under whom the plaintiff claims by regular conveyances.

On the motion of the defendant, the circuit court instructed the jury, that the letters of administration granted to James Lamotte were totally void; that therefore, the judgment of Bordeaux was not revived against the estate of Salvadore; that the sale and conveyance by the sheriff passed no title to the purchaser; and that the evidence was not sufficient to maintain the plaintiff's action. The jury found a verdict for the defendant, and judgment was rendered in his favor. The plaintiff excepted to the opinion of the court, and has sued out a writ of error to the judgment.

The sole defect alleged in the title of the plaintiff being in that part of it which depends on the sale and conveyance of the sheriff to Peter Freneau, the validity of that sale is the principal if not the only question in the cause. In support of it the plaintiff contends, 1st. That the letters of administration, being *durante absentia* of the executor, were properly granted to James Lamotte. *2d. If the ordinary erred in granting these letters, still Lamotte was administrator *de facto;* and his acts bound the estate of Salvadore, until those letters should be revoked. 3d. That the judgment on which the execution issued was properly revived by a court of competent jurisdiction, and its judgment can be questioned only in an appellate court. The negative of these propisitions is maintained by the defendant in error.

That the appointment of an executor, and his acceptance of the office, constitute a complete legal owner of the personal estate of the deceased, is admitted; but it is contended, that these acts suspend, without annihilating the power of the ordinary. So long as the executor is capable of exercising the authority with which he has been invested by the testator, it can be conferred on no other person; but when he becomes incapable, from any cause whatever, as by insanity or death, the power of appointing some person, who shall secure the estate from ruin, necessarily reverts to that tribunal which the law appoints for the general purpose of providing for the management of the property of dead persons. All cases of temporary administration, as, during the minority of an executor, or during his absence previous to the probate of the will, are considered as exercises of the same power, though in a less degree, and as proving that the ordinary may, after the executor has qualified, if he shall absent himself so as, in the opinion of the ordinary, to disqualify him from performing his duty, appoint an administrator *de bonis non* with the will annexed, whose power shall continue, until the return of the executor.

The court does not concur in this reasoning. In the cases stated at bar, and in all cases where temporary administration has been granted, unless

Griffith v. Frazier.

under a special act of the legislature, the executor was, for the time, absolutely incapable of performing his duty.    There existed an actual legal disability to perform the functions of his office.    Until probate of the will, and until letters testamentary are obtained, the executor cannot obtain any judgment; because it cannot appear that he is executor.    There is, therefore, an absolute necessity for appointing some person who, until probate, shall take care of *the estate.    But this is not the case with an exec- [*22 utor who, after taking out letters testamentary, absents himself from the state.    He is still capable of performing, and he is still bound to perform, all the duties of an executor.    There exists no legal disability in the executor, and consequently, there is no necessity for transferring to another those powers which the testator has conferred on a person selected by himself.    This power does not appear ever to have been exercised by the ordinary, in England, anterior to the statute of 38 George III.; and in South Carolina, the ordinary possesses no power which was not possessed by the ordinary in England, previous to that statute.    The practice of the particular ordinary who acted in this case, would not be sufficient to constitute the law, had it even never received judicial reprobation; but the case of *Ford* v. *Travis* puts an end to any doubt on this point.

The second point is one of more doubt and greater intricacy.    That the ordinary erred in granting letters of administration to Lamotte, is thought very apparent; but the effect of these letters is less obvious.    By the plaintiff, it is contended, that they constituted Lamotte an administrator *de facto,* rendered his acts valid, so far as third persons are interested, and exempted them from question, where they can be examined only incidentally.    By the defendant, it is contended, that they were granted by a person having no jurisdiction in the case, and are, therefore, an absolute nullity; that Lamotte was not, *de facto,* the administrator of Salvadore, and that his acts, as administrator, stand on no better or higher ground than the acts of any other person who should assume that character.

The well-known distinction between an erroneous act or judgment by a tribunal having cognisance of the subject-matter, and the act or judgment of a tribunal having no cognisance of the subject, is not denied; but it is contended, that the ordinary had jurisdiction in this case.    The ordinary, in South Carolina, is the court in which wills are proved; in which letters testamentary and letters of administration are granted.    He judges whether the applicant be entitled to administration or not, and rejects or admits the claim, according *to his opinion of the law.    Whether his judgment [*23 be correct or not, still it is his judgment; and when exercised upon an application for administration, it is exercised on a subject cognisable in his court.    That he grants letters of administration, in cases not expressly authorized by statute, and in which a will exists, in which an executor is named, proves that he has jurisdiction in such cases; and if he grants administration in one of them, improperly, the judgment is erroneous and voidable, but not void.    This argument has been very strongly urged, and there is great force in it.    The difficulty of distinguishing those cases of administration in which a court, having general testamentary jurisdiction, may be said to have acted on a subject not within its cognisance, is perceived and felt.    But the difficulty of marking the precise line of distinction, does not prove that no such line exists.

To give the ordinary jurisdiction, a case, in which, by law, letters of administration may issue, must be brought before him. In the common case of intestacy, it is clear, that letters of administration must be granted to some person by the ordinary ; and though they should be granted to one not entitled by law, still the act is binding, until annulled by the competent authority ; because he had power to grant letters of administration in the case. But suppose, administration to be granted on the estate of a person not really dead. The act, all will admit, is totally void. Yet, the ordinary must always inquire and decide whether the person whose estate is to be committed to the care of others, be dead or in life. It is a branch of every cause in which letters of administration issue. Yet the decision of the ordinary that the person on whose estate he acts is dead, if the fact be otherwise, does not invest the person he may appoint, with the character or powers of an administrator. The case, in truth, was not one within his jurisdiction ; it was not one in which he had a right to deliberate ; it was not committed to him by the law. And although one of the points occurs, in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction.[1]

*24]   *The case of letters of administration granted on the estate of a person in full life, is not the only one which may serve for illustration ; suppose, administration to be granted on the estate of a deceased per-

---

[1] In Allen *v.* Dundas, 3 T. R. 130, Judge BULLER says, that "in such case, the ecclesiastical court have no jurisdiction, and the probate can have no effect; their jurisdiction is only to grant probates of the wills of dead persons. The distinction in this respect is thus : if they have jurisdiction, their sentence, as long as it stands unrepealed, shall avail in all other places ; but where they have no jurisdiction, their whole proceedings are a nullity." And accordingly, the supreme court of Massachusetts, in Jockamsen *v.* Suffolk Savings Bank, 3 Allen 87, decided, that where administration upon the estate of a person in full life had been granted to one who, by virtue of his letters, received from a savings bank the amount of a deposit made by the supposed decedent, the latter was entitled to recover the amount from the bank, notwithstanding the prior payment to the administrator. And in a very recent case, the supreme court of Pennsylvania arrived at the same conclusion, holding, that letters of administration granted upon the estate of a living person, were not merely voidable, but absolutely void ; and that a voluntary payment to the holder of such letters, by a debtor of the alleged decedent was no protection, though it might be otherwise, if payment was compelled by a court of competent jurisdiction. Devlin *v.* Commonwealth, 29 Pitts. L. J. 143. So, in McPherson *v.* Cunliff, 11 S. & R. 430, Judge DUNCAN says, "the matter which gives the orphans' court jurisdiction, is the death of the owner, intestate, for if administration were taken out on the effects of a living man, or of one who died testate, the administration itself would be void." And see Fisk *v.* Newell, 9 Texas 13 ; and the note of Judge REDFIELD, in 24 Am. L. Reg. 212. The court of appeals of New York, in the case of Roderigas *v.* East River Savings Institution, 63 N. Y. 460, arrived at a directly opposite conclusion, on the theory that the death of the party being a jurisdictional fact, the finding of such fact by the surrogate was conclusive, in favor of a third person, who had paid money to the administrator, on the faith of his decree. And in Comstock *v.* Crawford, 3 Wall. 396, it was ruled, that a recital in the record of a probate court, of facts necessary to confer jurisdiction, is *primâ facie* evidence thereof, in a collateral proceeding. Where the jurisdiction depends upon a fact which the court is required to ascertain in its decision, such decision is conclusive, unless reversed on a direct proceeding for that purpose. The Rio Grande, 1 Woods 279. It has, however, been decided in New York, that the party who attacks a judgment for want of jurisdiction, may show the non-existence of jurisdictional facts, by evidence *dehors* the record, though the record recite their existence, as, by showing that the surrogate never in truth passed upon them as facts. Roderigas *v.* East River Savings Institution, 76 N. Y. 316. An administrator appointed under such circumstances is not a *de facto* officer. Ibid. 324.

Griffith v. Frazier.

son, whose executor is present, in the constant performance of his executorial duties.    Is such an appointment void, or is it only voidable?   In the opinion of the court, it would be an absolute nullity.

The appointment of an executor vests the whole personal estate in the person so appointed.    He holds as trustee for the purposes of the will, but he holds the legal title in all the chattels of the testator.    He is, for the purpose of administering them, as much the legal proprietor of those chattels as was the testator himself while alive.    This is incompatible with any power in the ordinary to transfer these chattels to any other person by the grant of administration on them.    His grant can pass nothing : it conveys no right ; and is a void act.

If the ordinary possesses no power to grant administration, where an executor is present performing his duty, what difference can his absence make, provided that absence does not disqualify him from executing his trust ?   If all his powers as an executor remain, if he is still capable of appearing in courts of justice as the representative of the deceased, if he is still the legal owner of the chattels of the deceased, and still capable of disposing of them, it would seem, that he is potentially present, though personally absent.    It is not easy to perceive any principle on which the ordinary can assert his power to take the estate out of the executor and vest it in an administrator.    If he cannot do this, then the attempt to do it must be a void act.    If the administrator *durante absentia* be only the agent of the executor, it still occurs, that the executor can himself appoint, and is the proper person to appoint, his own agent.    There is no necessity for the intrusion of the ordinary

Let the case be supposed, of a suit by the executor, while actually resident abroad.    Would he be incapable of sustaining the action ?   Would his absence be a good *plea in bar?   If it would not, how can the grant of letters of administration to another take the property in the thing sued for, out of the executor, and place it in that other? [*25

Letters testamentary, when once granted, are not revocable by the ordinary.    He cannot annul them, or transfer the legal interest of the executor to any other person.    His rights and his duties are beyond the reach of the ordinary.    How, then, can this be effected by the grant of letters of administration ?

The cases in which administration has been granted, notwithstanding the existence of a will, appear to be cases in which it is not apparent that there is any person possessing right in the chattels of the testator, or cases in which that person is legally disqualified from acting.    Where administration is granted, pending a dispute respecting a will, it is not certain, that there is an executor, or that there is a will.    If it be granted during the minority of an executor, it is because the executor is legally disqualified from acting, and indeed, has not taken upon himself, and could not take upon himself, the trust reposed in him.    He may, when of age, reject all the rights and powers conferred by the will ; and consequently, the interest is not yet a vested interest.    The rights and powers of the ordinary remain, until those of the executor commence.

So, in the case of an absent executor who has not yet made probate of the will and qualified.    Those letters testamentary which are indispensable to his character as executor, and which, during their existence, leave the

ordinary without any further power over the subject, are not yet granted. The executor has as yet no evidence that he is executor; he is not yet able to act as one. He may never be able to act; for he may never take out letters testamentary; he may renounce the executorship. The ordinary, then, is not yet deprived of that power which he possesses to appoint a person to represent a dead man who has no representative. His *jurisdiction over the subject remains, until he parts with it, by issuing letters testamentary.

*26]

The difference between granting administration in cases where there is a qualified executor, capable, in law, of acting, and where he has not qualified is such as, in reason, to justify the opinion that though, in the latter case, the ordinary may have jurisdiction, and his act, though erroneous, may be valid till repealed, yet, in the former case, he can have no jurisdiction, and his act is in itself an absolute nullity. If, under any circumstances, the ordinary could grant administration, during the absence of an executor who has made probate of the will and is legally competent to act, then he would have jurisdiction of the subject, and would judge of those circumstances; but if, in no possible state of things, he could grant such administration, it would be difficult to conceive how he can have jurisdiction.

If we refer to authority, we can find no case and no *dictum* which admits the jurisdiction of the ordinary, where there is an existing executor capable of acting. In many cases, it is stated, that an administration granted where there is such an executor is void. Toller, in his Law of Executors, page 120, says, "If there be an executor, and administration be granted, before probate, and refusal, it shall be void, on the will's being afterwards proved, although the will were suppressed, or its existence were unknown, or it were dubious who was executor, or he was concealed, or abroad, at the time of granting the administration." It is also void, "if granted because the executor has become a bankrupt," or if granted, " *durante minoritate*, where the infant had attained his age of seventeen," until the statute of 38 Geo. III. So, "if granted by a bishop, where the intestate had *bona notabilia*, or by an archbishop, of effects in another province."

The case of *Ford* v. *Travis*, decided in South Carolina, is express to this point, and renders a further reference to English books unnecessary. The counsel for the plaintiff admits this to be the law, *where an absolute administration is granted; but denies the law to be applicable to the grant of a temporary administration. However correct this distinction may be, in many cases, its application to that at bar is not admitted. No temporary administration can be granted, where there is an executor in being, capable of acting, and where the case will not justify the grant of a temporary administration, it would seem to be as completely out of the jurisdiction of the ordinary, as the grant of an absolute administration, where that is not within his power.

*27]

The case put by Toller, of administration *durante minoritate*, where the executor is of the age of 17, seems full in point. This is a temporary administration, and the minority of the executor is a fact for the consideration of the ordinary. Yet if, in such a case, he grants administration, the act is void, because, in fact, it is not a case in which he can grant it.

The reasoning of the court in the case of *Ford* v. *Travis*, appears applicable to this case. They say, the executor, having proved the will, "was in

Griffith v. Frazier.

the nature of a trustee ; he could neither abandon his trust, nor be deprived of his interest in the estate of the deceased, by any act of the ordinary. The ordinary, by proving the will and qualifying the executor, executed his power ; and no law exists in this state, authorising him to resume it during the lifetime of the qualified executor, notwithstanding he may be absent from the state. Letters of administration granted under such circumstances are void *ab initio.*

If the ordinary cannot resume his power, so as to grant an absolute administration, he cannot resume it for a limited time. He cannot, by any act of his, divest the interest of the executor for an instant. The power may revert to him by operation of law, but cannot be assumed by any act of his own.

The grant of a temporary administration, as, during the minority of an executor, is *ad usum et commodum *executoris.* But in this case, the administration is, for the time, absolute, and makes the administrator the entire representative of the deceased. It would not be unworthy of remark, if the case depended on it, that though the application of Lamotte was for administration during the absence of the executor, yet the grant itself is without limitation. [*28

But, in its very nature, the appointment of an administrator, during the absence of an executor, under no disability, is essentially nothing more than the appointment of an agent for that executor. This, the ordinary has not the power to do ; the executor alone can appoint his agents.

If the ordinary had no jurisdiction in the case, then the grant of administration was void *ab initio,* and all the acts of the grantee are void. Toller 128 ; 3 T. R. 125.

It is contended by the plaintiff, that could this administration even be considered as null, where that forms the direct question before the court, as it did in *Ford* v. *Travis,* yet that point cannot be examined, where it is collateral and incidental. The answer which has been given at bar to this argument is entirely satisfactory. The question has never been examined in a court of law, sitting as an appellate court. The question has never been, whether the letters of administration shall be revoked or not, but whether they were originally void, so as not to warrant the particular act in support of which they were alleged. But in this case, the letters of administration come as directly before the court as in the case of *Ford* v. *Travis.* The conveyance from the sheriff to Freneau forms a part of the plaintiff's title ; and the validity of that conveyance may depend on the question whether Lamotte was or was not the administrator of Salvadore. The question, therefore, must necessarily be decided ; and a majority of the court is of opinion, that administration was granted by a court having no jurisdiction in the particular case, and is, therefore, absolutely void.

*3d. It is contended on the part of the plaintiff, that the judgment on which the execution issued was properly revived by a court of competent jurisdiction, whose judgment is, therefore, conclusive, until reversed. [*29

The first objection made to this judgment of revivor is, that it was made without legal process. The thirty day rule is substituted for the *scire facias* only in cases where lapse of time prevents the plaintiff from suing out execution. However this court might construe the law, on an appeal from

Griffith v. Frazier.

a judgment of revivor in such case, that question has been decided by a court of competent jurisdiction, and cannot be reviewed here.

The second objection is, that the letters of administration being a mere nullity, no party representing the estate of Salvadore was before the court, and consequently, the judgment could not bind that estate. This question is one of considerable difficulty. Had the judgment been revived against the executor himself, without the service of process, it would, perhaps, while in force, have protected all proceedings under it. But this judgment is revived against Lamotte, who was not the representative of Salvadore. In the opinion of a majority of the court, an execution on this judgment could not legally be levied on the property of Salvadore ; and if so, the title was not vested in the sheriff by the service of the execution, and could not be conconveyed by him to the purchaser. Upon this point, the case cited from 1 Wils. 302, is a strong one against the opinion of the court : but in that case, the execution, though irregular, was issued on a real judgment, and justified the sheriff in taking the effects of the deceased. On its face, it was unexceptionable ; it issued at an improper time ; but in all other respects was correct. In this case, the execution issued on a judgment which was itself a nullity ; and it authorized the sheriff to take the effects real and personal of Joseph Salvadore, in the hands of James Lamotte to be administered. Now the property of Salvadore was not in the hands of Lamotte, but was in the hands of his executor.

*30]     *The case in Wilson, too, is so briefly, I might say obscurely, reported, as to leave the principle, on which the court decided, entirely uncertain. It does not appear, that the object of the motion extended further than the 'restoration of the money. This was not an attempt to set aside the sale ; and nothing appears in the case, from which is to be conclusively inferred, what the opinion of the court would have been on that question.

In the opinion of a majority of the court, there is no error in the judgment of the circuit court, and it is affirmed with costs.

Wednesday, February 16th. *Harper* observed, that he understood the opinion of the court to be founded considerably on the form of the *fieri facias*, inasmuch as it directed the sale of the lands of Salvadore in the hands of Lamotte, when, in fact, there were no lands in the hands of Lamotte.

MARSHALL, Ch. J.—That was one ground of the opinion : but another, was, that the sale was founded on a void judgment.

*Harper*, as to the first point, suggested to the court that the form of the *fieri facias* was against the lands as well as the goods.